## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**TERRY A. JONES,,**

      **Petitioner**,

     **v.**                  **CASE NO.  2:14-cv-1218**

**WARDEN, LEBANON**           **JUDGE GEORGE C. SMITH**
**CORRECTIONAL INSTITUTION**,

                        **Magistrate Judge Kemp**

      **Respondent.**

## REPORT AND RECOMMENDATION
## AND ORDER

Petitioner, a state prisoner, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the Respondent's Supplemental Return of Writ and the Petitioner's Traverse (Docs. 21 and 26) as well as two motions filed by Petitioner.  Petitioner's motion to delete claim one of the petition (Doc. 19), which claim has already been denied by the Court, is **DENIED AS MOOT**. His other motion (Doc. 20), which asks, as substantive relief, for an order directing that he not be transferred to another prison during the pendency of this action, is also **DENIED AS MOOT**, it appearing that the transfer has already taken place.  For the reasons that follow, it is recommended that the Court deny the petition and dismiss this action.

## I. Background

For ease of reference, the Court will restate the brief factual background included in the Court's prior Report and Recommendation  (Doc. 12), which concluded that ground one of the petition had been procedurally defaulted, and recommended that a supplemental return of writ be filed with respect to ground two.  That recommendation was adopted on December 4, 2015 (Doc. 18).  As the Court said in the prior Report and Recommendation, at 4:

> The alleged victim in the case was a daughter of Petitioner's then-girlfriend, Danielle Inskeep (she and Petitioner subsequently married). Ms. Inskeep had shared custody of her two daughters.  In September of 2011, the younger of the two told her father that Petitioner had been sexually abusing her.  She repeated these allegations to workers at Nationwide Children's Hospital.

> The victim was nine years old at the time of trial.  The trial court held a hearing to determine if she was competent to testify.  After finding that she was, the trial judge allowed her to testify by closed circuit video. She repeated her allegations to the jury.  The jury was also permitted to hear that she had told the same story to a caseworker at Children's Hospital.  Petitioner took the stand and denied that he had ever sexually abused the victim.  As noted above, the jury convicted him despite his denials.

> In his petition for writ of habeas corpus, Petitioner raised two claims:

> 1.    The trial court abused its discretion when it found the child was competent to testify, which violated Petitioner's right to due process of law; and

> 2.    The state failed to prove the existence of one or more of three factors contained in O.R.C. §2945.481, for the court to permit the child witness to testify via closed circuit video.

By Order dated December 4, 2014, adopting the Magistrate Judge's Report and

Recommendation, the Court dismissed Claim One as procedurally defaulted.  (Doc. 18).
Respondent's supplemental return was filed on December 23, 2015. (Doc. 21).  Petitioner
filed a supplemental traverse on February 5, 2016. (Doc. 26).

## II.  <u>Standard of Review</u>

Petitioner seeks habeas relief under 28 U.S.C. §2254. The Antiterrorism and
Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's
review of state-court determinations. The United State Supreme Court recently
described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose
claims have been adjudicated in state court" and emphasized that courts must not
"lightly conclude that a State's criminal justice system has experienced the 'extreme
malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––,
––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see
also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA... imposes a highly deferential
standard for evaluating state-court rulings, and demands that state-court decisions be
given the benefit of the doubt.") (internal quotation marks, citations, and footnote
omitted).  The factual findings of the state appellate court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by
> a person in custody pursuant to the judgment of a State court, a
> determination of a factual issue made by a State court shall be presumed
> to be correct. The applicant shall have the burden of rebutting the
> presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e)(1).

Habeas corpus should be denied unless the state court decision was contrary to,

or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court, or based on an unreasonable determination of the

facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d)(1); *Coley v.*

*Bagley,* 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley,* 457 F.3d 501, 513 (6th Cir.

2006)); *see also* 28 U.S.C. §2254(d)(2) (a petitioner must show that the state court relied

on an "unreasonable determination of the facts in light of the evidence presented in the

State court proceeding"). The United States Court of Appeals for the Sixth Circuit

explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1)
> "the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law[,]" or (2) "the state court confronts
> facts that are materially indistinguishable from a relevant Supreme Court
> precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362,
> 405 (2000). A state court's decision is an "unreasonable application" under
> 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from
> [the Supreme] Court's cases but unreasonably applies it to the facts of the
> particular ...case" or either unreasonably extends or unreasonably refuses
> to extend a legal principle from Supreme Court precedent to a new
> context. *Id.* at 407....

*Coley, supra*, at 748-49. The burden of satisfying the standards set forth in § 2254 rests

with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court

precedent] unreasonable,...[t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–

21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409

and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)). *See also Harrington v. Richter*, 131 S.Ct. at

786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. " '[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)). *See also Nicely v. Mills*, 521 Fed.Appx. 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Moreover, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a federal habeas court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster, supra* at 1398.

## III.  Discussion

In ground two, Petitioner alleges that his Sixth Amendment right to confront the witnesses against him was violated when the trial court permitted the alleged child victim to testify at trial outside the courtroom by way of two-way closed circuit video.

As noted above, on appeal, the appellate court addressed only a claim based on state law, and because it found that Petitioner had not properly objected to the procedure used by the trial court, reviewed that claim only for plain error.  This Court, however, has concluded that Petitioner both fairly presented a federal constitutional claim, as well as a claim under Ohio law, to the state court of appeals, and that he had not waived that claim on appeal.  Doc. 18, at 5.  Consequently, this Court must resolve the Sixth Amendment claim on its merits.  Under the standard of review set forth above, however, even though the state court did not address the federal claim, this Court can grant Petitioner relief only if the result of the state court proceedings - that is, the affirmance of his conviction despite his objection to allowing the victim to testify by two-way closed circuit television - represents an unreasonable application of clearly established federal law.  For the following reasons, the Court cannot reach that conclusion.

It is helpful to begin with some basic principles.  The Sixth Amendment  right to be confronted with one's accusers requires, absent special circumstances,  that the witnesses personally appear at the defendant's trial and be subject to live cross-examination. *Crawford v. Washington*, 541 U.S. 36, 51 (2004).  Stated a different way, testimonial statements of a witness who does not appear personally at trial may not be admitted or used against a criminal defendant unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine that witness. *Id.* However, a defendant's right to face-to-face confrontation is not absolute.  Rather, as

the Supreme Court said in *Maryland v. Craig*, 497 U.S. 836, 849-50 (1990) "we cannot say that [face-to-face] confrontation is an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers" and that this right, like other rights found in the Sixth Amendment, must "be interpreted in the context of the necessities of trial and the adversary process."  Nevertheless, the Supreme Court noted that "[t]hat the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with."  *Id.* at 850.  The Supreme Court then held that a defendant's right to confront accusatory witnesses may be satisfied absent a physical confrontation at trial only where "denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."  *Id.*

In *Craig*, the Supreme Court was faced with the question of whether a Maryland statutory procedure which allowed a victim to testify by one-way closed circuit video violated the Sixth Amendment.  The procedure was described in this way:

> The child witness is ... examined and cross-examined in the separate room, while a video monitor records and displays the witness' testimony to those in the courtroom. During this time the witness cannot see the defendant.  The defendant remains in electronic communication with defense counsel, and objections may be made and ruled on as if the witness were testifying in the courtroom.

*Id.* at 842.  In support of its motion to allow testimony to be provided in this way, the State presented expert testimony that the named victim would suffer "serious emotional distress such that [the victim could not] reasonably communicate if required

to testify in the courtroom." *Id.* at 841.  The Supreme Court, based on that testimony, found no Sixth Amendment violation, noting that the  purpose of the Confrontation Clause is "ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." *Id.* at 846, and concluding that the Maryland procedure "preserves all of the other elements of the confrontation right: The child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." *Id.* at 851.

The *Craig* court set out three factors that must be considered in order to justify allowing the witness to testify by closed-circuit video and held that these factors must be evaluated in relation to the specific facts of each case.  Those factors are: (1) whether "the use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify"; (2) whether "the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant"; and (3) whether "the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*, i.e., more than "mere nervousness or excitement or some reluctance to testify." *Craig, supra,* at 855-56.

In his petition and traverse, Petitioner argues that allowing the child to testify via two-way closed circuit video constituted "theatrics" and prejudiced the jury against

him.  He also argues that the witness was lying, and that the trial court made no finding that the witness had refused to testify in person, that she would have been unable to communicate, had she been present in the courtroom,  due to extreme fear, or that she would suffer emotional trauma if she were required to testify in person.  (Docs. 1 and 25).  Respondent argues that Petitioner has failed to demonstrate that "the Ohio Court of Appeals' decision to reject his claim involved an unreasonable application of or was contrary to clearly established Supreme Court law."  (Doc. 21 at 3).

The Court first examines the factual background of this case, keeping in mind the Supreme Court's admonition that each case where face-to-face confrontation of an accusing witness is not permitted is to be judged on its individual facts.  Here, before making its ruling, the trial court held a hearing.  At that hearing, social worker Elizabeth Ramsey, who treated the victim, was called to testify in support of the State's motion to present the victim's testimony by closed-circuit television.  She first testified that the child was "scared" about testifying in general.  Further, the child was mildly to moderately anxious about being in the presence of Petitioner.  Ms. Ramsey was asked her opinion about how testifying in the courtroom with Petitioner present might affect the child.  She said that it might cause the child to regress in coping with the incident itself, which had caused her to suffer nightmares and to struggle with her schoolwork.  Ms. Ramsey also said that testifying in person would likely be "more than she [the child] can handle" and that "it would be very difficult for her and the potential risk is great."   On cross-examination, Ms. Ramsey admitted that she was predisposed to be

on the safe side with respect to the child because she was concerned for the child's well-being, but reiterated that if the child testified in a "safe setting that separates her from Mr. Jones, I think there is a potential for less emotional trauma than if she has to sit in the same room. *See* Transcript of August 8, 2012 Motions Hearing, Doc. 7-2 , at 46-55). The trial court accepted her testimony and ordered that the two-way video procedure be used at trial.

When the child was testifying, Petitioner, the jury, the trial judge, and counsel were all able to observe, on video monitors, the child's demeanor, and counsel was able to question her in real time through the two-way closed circuit television connection. She could also see them. The child testified that Petitioner came into the bottom bunk of the bed she shared with her sister on a number of occasions and raped her while her sister was on the top bunk. She stated that Petitioner also threatened to hurt her if she told anyone about his behavior. The child acknowledged seeing Petitioner on the monitor in front of her and correctly identified Petitioner as Terry Jones. *See* Transcript of Jury Trial, Doc. 7-3 , at 137-55. The Sixth Amendment claim in this case must be judged with this background in mind.

The first reason that Petitioner has not demonstrated that the state court's decision to allow the victim to testify in this way is that there is no well-settled Supreme Court precedent dealing with testimony given by way of two-way (as opposed to one-way) closed-circuit television. As the court observed in *Horn v. Quarterman*, 508 F.3d 306, 318 (5th Cir. 2007), "our independent search has not found[] any post-*Craig*

decision by a federal appellate court that squarely states that introduction of testimony through two-way closed-circuit television violates the Confrontation Clause."  In reaching that conclusion, the court  cited to, among other decisions, *Fuster-Escalona v. Florida Dept. Of Corrections,* 170 Fed Appx. 627, 629-30 (11th Cir. 2006), which held that it was "not contrary to, or an unreasonable application of, established federal law to hold that no case-specific findings were required prior to [ ] four children testifying via two-way closed television."  *See also Johnson v. Warden, Lebanon Correctional Institution*, 2014 WL 4829592 (S.D. Ohio Sept. 29, 2014), *adopted and affirmed* 2015 WL 268924 (S.D. Ohio,Jan. 21, 2015)(discussing the case law on this subject, including  *United States v. Gigante*, 166 F.3d 75, 81 (2nd Cir. 1999), which held that it was not necessary to apply *Craig* when the trial judge "employed a two-way system that preserved the face-to-face confrontation," but ultimately finding it unnecessary to resolve the issue because the state court had made findings that satisfied *Craig)*.  In light of this unsettled state of the law, Petitioner would not be entitled to habeas corpus relief even if the state courts had made no findings at all concerning the need to have the child testify via two-way closed circuit television.

This conclusion is bolstered by the fact that the trial court did, in fact, make its decision based on a factual record that addressed the *Craig* factors.  There was testimony that not just being a witness in the courtroom setting, but being in the physical presence of Petitioner, would be harmful to the child.  Ms. Ramsey detailed her concerns about that, and the trial court credited her testimony.  Such factual findings

are binding on this Court.  *See* 28 U.S.C. §2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct").  Whether this Court would have made the same findings or reached the same conclusions as did the state trial judge is not the issue.  It would be extremely difficult to characterize his ruling as contrary to, or an unreasonable application of, *Craig* to this set of facts.  For both of these reasons, the Court concludes that Petitioner has not demonstrated that the result of the state court proceedings represents an unreasonable application of clearly established federal law.  Therefore,  it is recommended that the petition be **DENIED** and that this case be **DISMISSED**.

## IV.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


                                        /s/ Terence P. Kemp
                                        United States Magistrate Judge